JOHN A. EDWARDS AND M. L. ERRICKSON v. E. A. GILDEMEISTER AND THE KANSAS CITY LIVE STOCK COMMISSION COMPANY.

**No. 11,065.**  ( 59 Pac. 259.)

1. CONTRACT OF SALE—*Estopped by Acceptance of Consideration.*  A contract in writing for the sale and delivery of cattle, made by two persons, as parties of the first part, with two others, as parties of the second part, contained this agreement: "Parties of the second part agree to pay four thousand dollars upon the signing by all parties of this contract." The money was paid and accepted, but one of the first parties refused to sign the contract or fulfil its terms. *Held,* that the quoted stipulation was for the performance of an act by the second parties and not for the performance of one of substantive character by the first parties; and *held* further, that the first parties, having accepted the money of the second parties, were bound by the terms of the contract without each one having signed it.

2. ———— *Principal and Agent.* A contract executed by an authorized agent in his own name, but in fact in behalf of his principal, is the contract of the principal, and suit may be brought against him to enforce its provisions.

Error from Wyandotte district court; H. L. ALDEN, judge. Opinion filed December 9, 1899. Reversed.

*Powell & Powell,* for plaintiffs in error.

*Lambert & Huggins,* for defendants in error.

The opinion of the court was delivered by

DOSTER, C. J. : This was an action for damages for breach of contract to deliver cattle previously pur-

chased, brought by John A. Edwards and M. L. Errickson against E. A. Gildemeister and the Kansas City Live Stock Commission Company. The contract was in writing. Its material portions were in the following language :

"EMPORIA, KAN., July 15, 1897.

"The following agreement and contract is hereby entered into by E. A. Gildemeister, of Council Grove, Kan., and the Kansas City Live Stock Commission Company, of Kansas City, parties of the first part, and John A. Edwards and M. L. Errickson, both of Eureka, Kan., parties of the second part.

"Whereby parties of the first part agree to deliver to said second parties ten hundred and fifty-six (1056) yearling and two-year-old steers, now in, and to be kept in charge of John Papin, of Pawhuska, O. T., and in his pastures in the Osage Nation, near Pawhuska. . . . In consideration of the first payment of four thousand dollars, said first parties agree at the date of September 20, 1897, to either count out all of the above-named steers, cows, heifers, and bulls, or to guarantee the number to said second parties, and first parties to be responsible to second parties for same, excepting any losses from natural causes, such as death, after this date to September 20, 1897.

"Said first parties further assume all cost and expense of pasturing all cattle and delivering all cattle to any point as per pasture contract, up to December 1, 1897, and to sign over and indorse all pasture contracts and leases to second parties, on payment by them of the purchase-money.

"Parties of the second part agree to pay four thousand dollars upon the signing by all parties of this contract, and excepting one dollar per head, which is to be held back for delivery and for payment of pasture, said second parties agree to pay the balance of the payment on September 20, 1897.

E. A. GILDEMEISTER.
M. L. ERRICKSON.
JNO. A. EDWARDS."

The petition of the plaintiff, among other things, alleged:

" The said defendant E. A. Gildemeister and the Kansas City Live Stock Commission Company sold, contracted and agreed to deliver to the plaintiffs the following property at the following price, to wit, . . . the plaintiffs paying the defendants therefor at the time they purchased the same the sum of four thousand dollars ; the balance, excepting one dollar per head which was to be held for delivery and for payment of pasture, to be paid at the delivery of said cattle to the plaintiffs on the 20th day of September, 1897 ;  . . . that said contract was made by and with the defendant E. A. Gildemeister, for himself and the said Kansas City Live Stock Commission Company ; he, the said Gildemeister, at the time of making the contract, to wit, on the 15th day of July, 1897, being part owner of said cattle, and also the duly authorized agent of said defendant the Kansas City Live Stock Commission Company to make said sale and contract for delivery of said cattle."

To this petition the defendants demurred on the ground that it failed to state a cause of action.  The demurrer was sustained, and the plaintiffs prosecute error to this court.  The court was in error.  The demurrer should have been overruled.  The reason for sustaining it seems to have been that the contract for the sale and delivery of the cattle, by its own express terms, was not to take effect until signed by all the parties to it, and, inasmuch as the Kansas City Live Stock Commission Company had not signed it, that it was not, therefore, a completed agreement.  The particular clause of the instrument on which the claim of non-execution rests is the following :  " Parties of  the second part ( Edwards and Errickson) agree to pay four thousand dollars upon the signing by all parties of this contract."  It will be observed that this clause did not

relate substantively to the time of the taking effect of the agreement, but to the time of the performance under it of an act by the plaintiffs. It did not relate to an act to be done by the sellers of the cattle, but to one to be done by the buyers of them. It set a time for the payment of money by the buyers, not a time for the execution of the paper by the sellers. It was an agreement on the part of the buyers to pay money at a specified time, not a reservation of right by the sellers to withhold their signature to the instrument until the advance payment of money was made by the buyers.

It may have been that the sellers could have withheld their signature until the advance payment was made, although it is not necessary for the purposes of the case so to decide, but when the buyers paid their money the contract became completed on their part, and their rights under it could not be defeated by the refusal of the sellers to sign it. The sellers, after their acceptance of the money from the buyers, could not be heard to say: "The contract between us is not complete, and cannot be completed without our signature to it, and this signature we withhold." The buyers chose to pay their money on the contract without the signature of all the sellers to it. According to the allegations of the petition, they paid on the contract the stipulated advance sum of $4000. Even if the contention of the defendants in error were sound the plaintiffs in error would be entitled to a return of this sum of money, and for that reason, if for no other, the demurrer to the petition should have been overruled.

The defendants in error also contend, independently of the fact, as claimed by them, that the contract by its own terms was not to take effect until signed by

the Kansas City Live Stock Commission Company, that upon general legal principles it could not take effect without such signature. Written contracts, they say, take effect only upon the assent of the parties to them evidenced by their signatures thereto. That as a general proposition is correct, but it is not so as to contracts executed in behalf of parties by their duly-authorized agents. In this case the petition alleged that Gildemeister was "the duly-authorized agent of the Kansas City Live Stock Commission Company to make said sale and contract for delivery of said cattle," and it also alleged that he did make such contract, not only for himself as part owner of the cattle, but also for his principal, the said Kansas City Live Stock Commission Company, the other part owner of the cattle. The allegations of the petition in this respect are, of course, to be taken as true as against the demurrer. The resulting law is plain and well settled.

"Where a simple contract, other than a bill or note, is made by an agent in his own name, whether he describes himself to be an agent or not, whether the principal be known or unknown, he, the agent, will be liable to be sued, and entitled to sue thereon ; and his principal also will be liable to be sued, and entitled to sue thereon in all cases ; and parol evidence is admissible, although the contract is in writing, to show that the person named in the contract was an agent, and that he was acting for his principal." (1 A. & E. Encycl. of L., 1st ed., 392.)

A multitude of authorities support the above-stated rule of liability of a principal in whose behalf a contract has been executed in the name of a duly-authorized agent, and its corollary rule of admissibility of parol evidence to identify the principal, if unnamed, and to show the authority of the agent. (Story, Ag., 9th ed., § 160a ; *Butler v. Kaulback,* 8 Kan. 669 ; *Wolfley*

*v. Rising*, 12 id. 535; *St. L. K. C. & N. Rly. Co. v. Thacher*, 13 id. 564; *Tracy v. Gunn*, 29 id. 508; *Nutt v. Humphrey*, 32 id. 100, 3 Pac. 787.

The order of the court below sustaining the demurrer is reversed, with directions to overrule it.