No. 36,531

In re Estate of Joseph Wittman, deceased. (J. G. BENNETT, Executor, etc., et al., *Appellees*, v. LULU DICKERSON [now LULU GARRITY], LILLIE MCBRIDE and NANNIE L. SPEER, *Appellants*).

(168 P. 2d 541)

Opinion filed May 4, 1946.

*R. F. Crick*, of Pratt, and *Donald C. Martindell*, of Hutchinson, argued the cause, and *B. V. Hampton, M. C. Bucklin*, both of Pratt, *William D. P. Carey, Wesley E. Brown* and *Edwin B. Brabets*, all of Hutchinson, were on the briefs for the appellants.

*W. D. Jochems,* of Wichita, and *George Barrett,* of Pratt, argued the cause for the appellees.

The opinion of the court was delivered by

PARKER, J.: In this action three daughters are contesting the probate of their father's will. They were unsuccessful in both the probate and district courts and now bring their cause here for appellate review.

Except for the executor of the decedent's estate all appellees are devisees and legatees under the will.

Questions involved in the appeal, as stated by appellants, are: (1) Did Joseph Wittman have testamentary capacity to make the will in question; (2) was he unduly influenced to make his will; (3) was the purported will subscribed and attested as contemplated by our statute; (4) various procedural questions, the primary ones being: (a) Whether the transcript of evidence taken in probate court is admissible in evidence as such in the district court, and (b) did the court err in permitting the proponents of the will to reopen the case for further evidence in chief.

In the court below the case was tried without a jury. That court decided all issues of fact against the appellants and made corresponding findings of fact and conclusions of law.

Briefly stated, the uncontroverted facts can be stated as follows: On the 3d day of August, 1943, Joseph Wittman, a resident of Kiowa county, then about 85 years of age, executed a will. By its terms he gave a quarter section of land to a friend, J. G. Bennett, a similar tract to another friend, George Fankhauser, and his three daughters the comparatively meager sum of $25 each. The remainder of his estate was left to the St. Francis Hospital of Wichita, Kan., and the American Red Cross of the United States of America to be used by such beneficiaries "as to them may appear proper in the administration of their charitable work for the benefit of mankind." His domestic life had not been tranquil; he married three times. Two daughters, Nannie and Lulu, were born of the first marriage. He was separated from his first wife in the early nineties; to the second marriage the daughter Lillie was born. He separated from the second wife in 1903 or 1904; none of the daughters ever made her home with her father after separation of the parents; he married the third time in 1920; the marriage was childless, and his wife died several years prior to decedent's death;

for some time prior to the date of the execution of the will he had been in poor health; the day after its execution he went to the St. Francis Hospital where he remained until October 2, 1943, the date of his death.

The first two questions must be determined from the facts as disclosed by the testimony and our duty is to determine whether the findings pertaining to them are supported by substantial evidence. In performing it, we are concerned only with evidence which supports the findings, we do not weigh or compare conflicting evidence and we cannot disturb the findings if the record discloses substantial evidence to support them (*In re Estate of Wa.ker*, 160 Kan. 461, 463, 163 P. 2d 359).

As to the first question the trial court's thirteenth finding of fact is all inclusive. It reads:

"At the time said Joseph Wittman executed said written instrument as his Last Will and Testament he possessed mental capacity to execute a Will and understood the nature and quality of his acts; he was capable of and did understand the purport and effect of the same and realized what disposition he was making of his property under the terms and conditions of said written instrument; he was capable of knowing and did know the nature and extent of his property and did realize who, if anyone, might be deemed to be the natural recipients of his bounty."

It must be admitted the testimony on this first question was highly conflicting. However, an examination of the record reveals beyond any question of doubt there was substantial competent evidence to support each and every factual conclusion to be found in finding thirteen. We are therefore compelled to approve it and hold that on August 3, 1943, the decedent had testamentary capacity to execute the will in question.

With respect to the second question the court found that the deceased was not under any mental restraint or undue influence at the time of the execution of his will. There is less conflict in the evidence on this question than there is on the one just determined. It necessarily follows appellants' contention the decedent was unduly influenced in making his will cannot be sustained.

We come now to the third question, appellants' principal contention, that the will was not subscribed and attested in conformity with G. S. 1943 Supp. 59-606, which reads:

"Every will, except an oral will as provided in section 44(59-608), shall be in writing, and signed at the end thereof by the party making the same. or by some other person in his presence and by his express direction, and shall be

attested and subscribed in the presence of such party by two or more competent witnesses, who saw the testator subscribe or heard him acknowledge the same."

When analyzed appellants' contention with respect to their third question is predicated upon the one proposition the witnesses did not know they were witnessing a will and, therefore, there was no compliance with the attestation requirement of the section of the statute just quoted. Their position on this point cannot be sustained for the simple reason the trial court reached a definitely contrary conclusion based on conflicting evidence. It is true that in district court each attesting witness to the will stated that he did not know the instrument, to which his name was signed in that capacity, was a will at the time he affixed his signature thereto. However, the testimony of O. G. Underwood, now deceased, and on that date a respected and capable attorney of Greensburg, was that before they signed the instrument he had advised each of them that Mr. Wittman wanted them to witness his will and that they went with him to Mr. Wittman's home where such instrument was signed by the testator in their presence and witnessed by them in his presence and in the presence of each other. Moreover, one of the attesting witnesses, notwithstanding his denial he knew he was witnessing a will, qualified it by the following statement:

"On the 3rd day of August, 1943, at the time of signing that instrument, from what I observed, something said immediately in the time surrounding caused me to know that that was a will or have the opinion I was witnessing a will."

Apparently the trial court, as it had a right to do, believed Mr. Underwood and for some reason disregarded the denials of the attesting witnesses. At any rate, upon the foregoing evidence it expressly found that he had told both witnesses Mr. Wittman wanted them to witness his will. Such a finding supported as it is by substantial competent evidence, cannot be disturbed by this court on appeal and, in itself, precludes appellants from now claiming decedent's will was invalid on the ground relied on by them.

We might add in passing that even though there had been no express finding of knowledge on the part of attesting witnesses the results, so far as this third objection to the will is concerned, would be the same. The controverting evidence relied on by appellants as sustaining their contention is not sufficiently clear, satisfactory and convincing to overcome the presumption arising from the duly

executed attestation clause of the will that it was witnessed by the witnesses with that understanding.

See *In re Estate of Wallace,* 158 Kan. 633, 149 P. 2d 595, where it was held:

"In order that the contradictory testimony of a subscribing witness to a will be sufficient to overcome the recitals of an attestation clause, execution of which is admitted, it must be clear, satisfactory and convincing.

"When the testimony of a subscribing witness to a will leaves the court in doubt as to just what happened at the time of the execution of the will, the existence of an attestation clause, the execution of which is admitted, and the recitals of which show full compliance with statutory requirements for the execution of a will, is sufficient to satisfy the court there has been full compliance with such requirements." (Syl. ¶¶ 4, 5.)

Appellants' next contention that the trial court erred in admitting in evidence the transcript of all testimony taken in the probate court does not include the evidence of Mr. Underwood who had died prior to the trial in district court and whose testimony was read as a deposition. They concede that procedure was proper, and make no complaint regarding it. Their claim is limited to the proposition that, since the hearing in district court of an appeal from a probate proceeding is a trial *de novo,* the transcript of the evidence adduced in probate court, insofar as it pertains to witnesses who are present and testify in district court during the trial of the appeal is not admissible. Assuming, but not conceding, there is some merit in their argument the record here does not require a determination of the question. Appellants did not move to strike the particular evidence of which they now complain. Under such circumstances there is no presumption it was considered or entered into the final decision of the trial court (*In re Estate of Walker,* supra). Moreover that evidence—the testimony of the attesting witnesses in probate court —was actually only cumulative. Irrespective of whether it was given consideration, since there was an abundance of other testimony to support the trial court's decision, it would not change the result of our decision. It follows the admission of the transcript of evidence did not result in prejudice to the rights of the appellants and does not justify a reversal of the judgment.

Appellants' final contention that the trial court erred in permitting the appellees to reopen the case and introduce additional evidence as to competency of the testator in support of their case in chief cannot be sustained. Our statute (G. S. 1935, 60-2909 [4]) permits, and our decisions (*Heck v. Quindaro Township,* 113 Kan.

647, 216 Pac. 293; *Finley v. Pierce*, 120 Kan. 474, 244 Pac. 2 and *Minch v. Winters*, 122 Kan. 533, 253 Pac. 578) approve that practice where—as here—the record fails to disclose conduct on the part of the trial court amounting to abuse of discretion. *In re Estate of Casida*, 156 Kan. 73, 131 P. 2d 644, cited by appellants, does not support their position. The most that can be said for the decision is that it recognizes the rule a determination of the order in which proof shall be produced is largely a matter which rests within the sound discretion of the trial court.

Since we find nothing in the record which justifies or permits its reversal the judgment of the trial court is affirmed.