No. 36,505

S. S. Simpson and Rachel Simpson, *Appellees,* v. Jacob P. Goering and Asta Goering, *Appellants.*

(170 P. 2d 831)

Opinion filed July 6, 1946.

*John P. Flinn,* of Newton, argued the cause, and *James L. Galle, Archie Mac-Donald, Russ B. Anderson,* all of McPherson, *Ezra Branine, Alden E. Branine* and *Fred Ice,* all of Newton, were on the briefs for the appellants.

*Charles E. Jones,* of Wichita, and *James A. Cassler,* of McPherson, argued the cause, and *Mark H. Adams, William I. Robinson, O. A. Witterman* and *J. Ashford Manka,* all of Wichita, were on the briefs for the appellees.

The opinion of the court was delivered by

Harvey, C. J.: This was an action to quiet title to real property and for consequential relief. The trial court made findings

of fact and rendered a decree for plaintiffs. Defendants have appealed.

Broadly speaking, the controversy involved the location of the boundary line between the northwest quarter and the northeast quarter of section 12, township 20, range 3, west of the 6th P. M. Plaintiffs were the owners of the northwest quarter of the section, having acquired title in June, 1937. Defendants were the owners of the west fifty acres of the northeast quarter of the section, having acquired title to the north ten acres in April, 1920, and to the south forty acres in May, 1929. There is no controversy here about the validity of these respective titles. Since the early 1890's there had been a north and south wire fence, supposed to be the boundary line between the two quarter sections. This had deteriorated, some posts had rotted, and much of the wire was on the ground, but the parties to this action and their respective predecessors in title had farmed to the fence, assuming it to be the true line between the quarter sections.

In 1943 plaintiffs obtained information tending to show that the fence above mentioned was not on the true line between the two quarter sections and they employed Guy Hall, the official county engineer and surveyor, to survey the line. Mr. Hall made the survey, which showed the true line between the two quarter sections to be about 131 feet east of the supposed line shown by the old wire fence. Plaintiffs started to build a fence along the line shown by the survey. Defendants tore it down and plaintiffs brought this action. The court's findings included the facts above mentioned and the following:

"There is no evidence of the intention of the defendant, Jacob Goering, or of any of the predecessors of said defendants, Jacob Goering and Asta Goering, to occupy or to take and hold any land which does not belong to them or any land beyond the true line of the land which they own, as the defendant, Jacob Goering, testified on the witness stand. The defendant, Jacob Goering also testified that he did not intend to claim more than the west Fifty Acres of the Northeast Quarter of Section 12, and that he did not intend to claim any interest in the Northwest Quarter of Section 12, and also that in his occupancy and farming of the land up to said fence, it was in the belief that the fence was on the true boundary line. He also stated that he did not know the fence was not on the true boundary line until S. S. Simpson told him in the fall of 1943. There is, therefore, no adverse possession on the part of these defendants in and to the disputed strip of ground situated on the East Side of the Northwest Quarter of said Section 12."

The court rendered judgment in harmony with these findings and quieted plaintiffs' title to all of the northwest quarter of the section as shown by the survey made by Guy Hall and perpetually enjoined defendants from interfering with plaintiffs' title and possession thereof.

Defendants filed a motion for a new trial which contained the ground, among others, that the judgment was contrary to the evidence; also filed motions for additional or different findings of fact. These motions were considered by the court and overruled, and defendants have appealed.

We turn now to the questions argued by appellants: *First,* that the court erred in overruling their motion to require plaintiffs to separately state and number their causes of action and to make the petition more definite and certain. Plaintiffs asked to have their title quieted, the defendants enjoined from interfering with their possession, and for $100 damages for interfering with the fence plaintiffs had constructed. This last item is the only one that could be regarded as a separate cause of action, but it was abandoned in the trial, plaintiffs offered no evidence on it, and hence the error, if any, is of no consequence. In quieting plaintiffs' title the court properly enjoined defendants from interfering with their possession.

Appellants question if the private survey of the county engineer and surveyor correctly and definitely established and located the true north and south line dividing the two quarter sections. In their answer defendants used language which admitted that the line established by the county surveyor was correct. On the date of the trial they filed an amended answer which somewhat qualified that admission. The record discloses that it was a private survey as distinct from a survey with notice as provided by statute. (G. S. 1935, 19-1423 to 19-1427.) Yet evidence of such a survey is competent. (G. S. 1935, 19-1414.) There is no contention here that the survey was inaccurate. The court was justified in treating it as correct.

Appellants then asked if the parties, together with their predecessors in title and interest, through acquiescence and recognition for many years of the wire fence approximately 131 feet west of the center line of the section as located by Mr. Hall, established and fixed the wire fence as the permanent boundary line between the respective tracts. This question has been before the court upon a

number of occasions. The law with respect to it is well settled. In *Steinbruck v. Babb,* 148 Kan. 668, 84 P. 2d 907, the syllabus reads:

"1. Open, notorious and exclusive occupancy of a strip of land for the period required by the statute of limitations, under the mistaken belief that the fence constituted the true boundary between the adjoining landowners, is not sufficient to make the possession adverse or hostile, but there must be proof or a conclusive inference of an unconditional intent to claim title and notice of such hostile intent or acquiescence therein.

"2. Where there is no agreement as to party line and no satisfactory evidence of the encroaching party's intention to claim title adversely and notice thereof to the title owner or acquiescence therein, there can be no title by adverse possession.

"3. In actions for acquiring of title by adverse possession a finding of occupancy by mistaken belief as to the correct location of the boundary line is not a substitute for any of the essential elements of such claim as adverse claim, intent to claim and notice of claim or acquiescence."

Many of the early cases on the subject are cited and discussed in that opinion. The holding is in harmony with the law of this court established by its prior decisions over many years. The decision of the trial court in this case is in harmony with the rules of law there stated. There is no basis for a different interpretation nor need of further discussion upon the matter as applied to the facts found by the court in this case.

While there is some criticism of the facts found, such criticism is to minor portions of the court's findings and not to the important or substantial ones. We see no reason to set them out and discuss them further.

Appellants question the correctness of the judgment under the facts found. We think it thoroughly sound. They also question whether the court erred in refusing to grant a new trial. Nothing is presented under this head which has not already been considered. The result is the judgment of the court below should be affirmed. It is so ordered.